McMILLIN, C.J.,
dissenting:
¶ 30. I respectfully dissent. Though there can be no doubt that Morris was engaged in nightmarish behavior, the clear effect being to intimidate and frighten his parents out of their wits, in my view he had not so clearly embarked on a committed course to purposely cause the death of his parents that a conviction for attempted murder may be permitted to stand.
¶ 31. None of Morris’s bizarre actions can fairly be classed as “a direct ineffectual act” done toward the commission of the crime of murder. Edwards v. State, 500 So.2d 967, 969 (Miss.1986).
¶ 32. The letter Morris wrote to his parents, though evidently the product of a severely troubled personality, does not contain actual threats of murder. He vows to make his parents “wish you weren’t so nasty to me,” and to destroy his parents “like you done me.” Clearly, whatever destruction Morris feels his parents might have visited upon him in the past, he only promises to respond in kind. Since Morris remained alive, that threat of retribution could not be fairly read as a death threat, by any reasonable construction.
¶ 33. At no time during any of the face-to-face encounters between Morris and his parents did Morris do anything other than make threats. He apparently was not armed during any of these encounters. The only evidence on the point was Morris’s own assertion that the weapon he had purchased remained at the pawn shop. The fact that, on the last actual encounter when the parents saw Morris in his car, he was observed to reach over into the his back seat of his vehicle does not prove an overt act toward murder. There is no evidence that would support an inference that, in doing so, he produced a firearm or that a firearm was even in the vehicle at *871 that time. No further contact between Morris and his parents occurred prior to Morris’s arrest at the Columbus motel. By that time, Morris’s parents had left the community for their own safety. At the time of his arrest, Morris was inside the motel room and certainly not in a position to inflict imminent harm on his parents but for timely police intervention. The arresting officers discovered an unloaded rifle in the closet of Morris’s motel room and a supply of ammunition, but there are simply too many uncertain events that would have to occur for the mere presence of an unloaded firearm in a motel room to constitute an overt act toward the murder of a person no longer physically present in the community.
¶ 34. On these facts, there is no direct act toward the commission of the crime of murder to support an attempt conviction. Even in their worst light, Morris’s acts were too early in the preparatory stage to constitute an actual attempt. A threat to kill another person no matter how credible, combined with evidence that ■ the threatening person possesses a firearm is not enough to sustain a conviction for attempted murder. Justice Oliver Wendell Holmes, Jr., in his classic work entitled The Common Law said:
The law does not punish every act which is done with the intent to bring about a crime. If a man starts from Boston to Cambridge for the purpose of committing a murder when he gets there, but is stopped by the draw and goes home, he is no more punishable than if he had sat in his chair and resolved to shoot somebody, but on second thoughts had given up the notion ... We have seen what amounts to an attempt to burn a haystack [“lighting a match with intent to set fire to a haystack has been held to amount to a criminal attempt to burn it, although the defendant blew out the match on seeing that he was watched.”], but it was said in the same case, that, if the defendant had gone no further than to buy a box of matches for the purpose, he would not have been liable.
Oliver Wendell Holmes, Jr., The Common Law 68 (Sheldon M. Novik ed., Dover Publications, Inc. 1991) (1881). In a continuing discussion on the subject, Justice Holmes notes that “judges have been puzzled where to draw the line,” but illustrates what, in his view, it takes to constitute a criminal attempt by observing as follows:
When a man buys matches to fire a haystack, or starts on a journey meaning to murder at the end of it, there is still a considerable chance that he will change his mind before he comes to the point. But when he has struck the match, or cocked and aimed the pistol, there is very little chance that he will not persist to the end, and the danger becomes so great that the law steps in.
Id. at 68-69.
¶ 35.1 do not seek to discount the apprehension and reasonable fears of Morris’s parents for their own safety, and it may well be that Morris was guilty of crimes besides attempted murder for which he could have been charged and punished. By way of example, I note that his original arrest was for the crime of stalking. I am, nevertheless, firmly convinced that Morris had not progressed so far into a scheme to cause the death of his parents that he may properly be convicted of attempted murder.
¶ 36.1 would reverse and render.
KING AND SOUTHWICK, P.JJ., AND COLEMAN, J„ JOIN THIS SEPARATE WRITTEN OPINION.